IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 18-CR-0002-CVE |
| RANDY ALAN HAMETT, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Now before the Court is defendant's motion to suppress (Dkt. # 170) evidence recovered from a search of his vehicle and trailer executed in May 2017 by a law enforcement officer acting pursuant to a state-issued search warrant. Defendant seeks to suppress this evidence because, he argues, "[t]here is a Krispy Creme container on the dashboard of [his] vehicle in a discovery photo" that was not defendant's property; a "lock box" within the vehicle had been pried open; the police illegally removed defendant's vehicle from private property on "tribal land," without his permission and without a warrant; and finally because the search was illegal where the state official acted pursuant to state law on what is now recognized tribal land. Dkt. # 170, at 3-4.

In response (Dkt. # 171), plaintiff argues that the entire motion is untimely. Plaintiff states that any factual issues raised by defendant are untimely because he has been aware of the search and manner in which it was conducted since at least his first trial, and yet waited until the eleventh hour before his second trial, and well after the motions deadlines for both trials, to raise these issues. Dkt. #171, at 3 n.1. Further, plaintiff notes defendant cites no law supporting that those factual issues are of any import. Id. Plaintiff further asserts that, even if the Court considers the (sole) legal issue within the untimely motion of whether the evidence is excludable under the Fourth Amendment

based on intervening law, the law is clear that the exclusionary rule should not apply in this case, as the law enforcement official relied in good faith on the magistrate judge's warrant when executing it. Dkt. # 171, at 3-6. The motion is fully briefed.

### I.

In May 2017, a state law enforcement officer, assigned to the United States Marshal's Violent Crime Task Force, executed a search warrant issued by a state court magistrate judge. Dkt. # 67, at 5. The warrant authorized the search of defendant's vehicle and trailer, which were initially located near a Walmart, photographed, sealed with evidence tape, and towed to Storey Wrecker, a police impound lot. Id. During the subsequent search, the officer recovered several firearms and ammunition from defendant's vehicle and trailer.

On January 10, 2018, a grand jury returned an indictment charging defendant with, inter alia, kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (count one); possessing and receiving stolen firearms and ammunition, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (count 3); and possession of firearms and ammunition while subject to a domestic violence protective order, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2) (count 4).[1] Dkt. # 13. A motions deadline of January 26, 2018 was set. Dkt. # 16. Defendant was arraigned, with counsel present, on January 18, 2018. Dkt. # 18. Thereafter the motions deadline was stricken, and reset pursuant to defendant's request (Dkt. # 22) to April, 9, 2018, and trial was set for May 14, 2018. Dkt. # 24.[2] On April 9, 2018, defendant requested another extension of the motions deadline and trial date, which the also

---

[1]   Count 2 of the original indictment was dismissed prior to trial. Dkt. # 34.

[2]   Shortly after the motion to continue the dates in the scheduling order was made, another attorney was appointed to assist in defendant's representation. Dkt. # 25.

Court granted. Dkt. ## 26, 27. The motions deadline was continued to April 16, 2018, the date requested by defendant, and trial was set for July 23, 2018. Dkt. # 27. At no point in the four months leading up to the motions deadline did defendant file any motion to suppress evidence. The case proceeded to trial in July 2018.

In an ex parte proceeding in the middle of trial, defendant asked to represent himself, which the Court allowed. Dkt. # 161-2. At no point did defendant allege ineffective assistance of counsel. Id.; Dkt. # 161-1. Ultimately, the jury found defendant guilty of all three counts charged. Dkt. # 109, at 1. Defendant was appointed new counsel prior to sentencing, and was sentenced. Dkt. # 59. Defendant appealed his conviction after new counsel was appointed for appeal. Dkt. # 99. In his appeal, defendant did not raise any issues as to the search warrant or the search and seizure. On June 15, 2020, the Tenth Circuit found defendant's waiver of his right to counsel was not knowing and intelligently made and remanded for a new trial. Dkt. # 109, at 2.

After remand, the Supreme Court decided that the Muscogee (Creek) Nation in Oklahoma had never been disestablished. McGirt v. Oklahoma, ⸺ U.S. ⸺, 140 S. Ct. 2452, 2482 (2020). This ruling called into question many aspects of Oklahoma's exercise of criminal jurisdiction over Native Americans within the boundaries of that reservation. It also established federal jurisdiction over Native Americans for certain criminal offenses committed in the Muscogee (Creek) Nation. 18 U.S.C. § 1153; McGirt, 140 S. Ct. at 2478.[3]

Defendant's case was reopened in the district court on July 21, 2020 and, on July 24, 2020, new defense counsel was appointed. Dkt. # 113. Defense counsel received discovery on August

---

[3] The McGirt ruling has subsequently been extended to the boundaries of four other tribes, including the Cherokee Nation.

18, 2020, and mailed it to defendant on August 31, 2020. Dkt. # 170, at 2. On September 14, 2021, a grand jury returned a superseding indictment (Dkt. # 118) and, subsequently, a second superseding indictment (Dkt. # 130) charging defendant with possessing and receiving stolen firearms and ammunition in violation of 18 U.S.C. §§ 922(j) and 924(a)(2), and possession of firearms and ammunition while subject to a domestic violence protective order in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2), identical to counts 3 and 4 of the original indictment, and ten new counts. The new counts arose primarily out of the federal government's newly-decided jurisdiction over tribal lands in eastern Oklahoma, and over defendant, an enrolled member of the Cherokee Nation. See Dkt. # 130 (second superseding indictment charging defendant with kidnapping in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 1201(a)(2) (in place of the previous charge of kidnapping under 18 U.S.C. § 1201(a)(1)); burglary in the second degree in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 and Okla. Stat. tit. 21, § 1435(A) and 1436(2); two counts of assault with a dangerous weapon in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 and 113(a)(3); domestic violence in Indian Country, in violation of 18 U.S.C. §§ 1151, 2261(a)(2) and 2261(b)(3); violation of a protective order in Indian Country, in violation of 18 U.S.C. §§ 1151, 2262(a)(1) and 2262(b)(3); and violation of a protective order in Indian Country, in violation of 18 U.S.C. §§ 1151, 2262(a)(2) and 2262(b)(3)).

On November 17, 2020, defendant was arraigned on the second superseding indictment, which contained every charge on which defendant had been arraigned on the superseding indictment on September 25, 2020. Dkt. ## 123, 135. On December 29, 2020, a pretrial conference was set for February 10, 2021. Dkt. # 138. At that hearing the parties discussed, inter alia, issues raised by the Supreme Court's ruling in McGirt. Dkt. # 141. Specifically, the parties discussed the process

of recognizing tribal boundaries as a matter of law, and discussed stipulations as to defendant's status as an Indian male. Subsequently, trial was set for April 19, 2021. Dkt. #147. A final pretrial conference was set for April 15, 2021. Dkt. # 158.

While the case proceeded toward trial, defense counsel mailed defendant discovery periodically, which defendant alleges was necessary because "lost mail, jail fights and cells being 'tossed' by corrections officers caused [him] to lose his discovery multiple times." Dkt. 171, at 2.[4] Defendant alleges he received the entire discovery by March 12, 2021. Id.

Then, on April 15, 2021, during the final pretrial conference, almost exactly three years after defendant's first motions deadline, more than six months after being arraigned on all charges implicating federal jurisdiction of Indian country and defendant's status as a Native American, more than one month after he alleges he received "entire discovery," and with fewer than two business days remaining before trial, defendant stated that he wished to file a motion to suppress. In that conference, defense counsel represented to the Court that he had reviewed the discovery in the case (specifically stating he reviewed the search warrant and return) and represented that he did not identify any suppression issues. He further represented that he submitted the discovery to defendant for his review multiple times. However, he stated that defendant wanted to discuss and submit a motion to suppress certain evidence in light of defendant's own review of the evidence and changes in law relating to McGirt.

---

[4]   Defense counsel represents he mailed defendant discovery on December 17, 2020, February 22, 2021, and March 11, 2021. Dkt. # 171, at 2. Defendant asserts the December 17, 2020 mailing was never delivered and that he did not see the entire discovery until after March 11, 2021. Id.

The Court, not wishing to deprive defendant of his opportunity to make a legal argument relating to intervening law (however delinquent) allowed defendant to file a motion, but without prejudice to a finding of untimeliness. Thus, on April 16, 2021, defendant filed his motion to suppress. In his motion, defendant asks the court to exclude evidence obtained from the May 2017 search of his vehicle and trailer, and states that, in light of the intervening law (that was handed down almost a year ago, and prior to the reopening of his case), the 2017 search executed by a state law enforcement officer pursuant to a warrant issued by a state court magistrate judge was in violation of his Fourth Amendment rights. Accordingly, defendant argues that the evidence should be suppressed.

In response, plaintiff argues that the motion is untimely. Further, plaintiff argues that any Fourth Amendment violation relating to jurisdictional issues raised by McGirt do not warrant the application of the exclusionary rule. Specifically, plaintiff states that Supreme Court precedent instructs that the exclusionary rule does not apply to a search conducted by law enforcement officer when he is acting pursuant to a seemingly-valid warrant, even if the warrant has jurisdictional defects. Plaintiff argues that the execution of the search warrant was done in good faith and the exclusionary rule does not apply.

## II.

### A. Timeliness

Under Rule 12(c)(1) of the Federal Rules of Criminal Procedure a "court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing." Fed. R. Crim. P. 12(c)(1). The rule states that "[i]f the court does not set [a deadline], the deadline is the start of the trial." Id. However, in this

district, the Federal Rules of Criminal Procedure are supplemented by Local Rules. Pursuant to Local General Rule 1-2, "[t]he trial judge has discretion in any civil or criminal case to waive, supplement, or modify any requirement of [the] local rules when the administration of justice requires." LGnR 1-2. Pursuant to the Local Rules, "[u]nless ordered otherwise, all motions shall be filed within fourteen days after defendant's arraignment." LCrR 47-2. Where "a party does not meet the deadline for making a [motion to suppress], the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

As the Court did not otherwise order, the local rule governs the motions deadline. LGnR 1-2. Defendant's last arraignment, on the second superseding indictment, was on November 17, 2020. Defendant had until December 1, 2020 to file any pre-trial motions. No motions were filed by that deadline. Accordingly, defendant's motion to dismiss is untimely.

As defendant's motion is untimely, in order for the Court to consider defendant's motion, defendant must show good cause. "The Supreme Court and lower federal courts have interpreted the 'good cause' standard under Rule 12(e) to require both (1) 'cause' for the failure to raise the claim on time, and (2) 'prejudice' resulting from the error." Fed. R. Crim. P. 12 advisory committee note to 2014 amendments (citing Davis v. United States, 411 U.S. 233, 242 (1973); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 363 (1963)).

Here, defendant states that chaotic pretrial detention conditions prevented him from receiving the "entire discovery" until March 12, 2021. Dkt. # 171, at 2. Defendant does not make any representations as to when he received the specific discovery relating to the search, which was available to him prior to and during the trial for which he was present and in which he participated in 2018. Defendant does not provide any rationale for why he made no motion in the month

between the day he received the "entire discovery" and his final hearing date. Defendant does not explain why he did not request an extension of time during that period.

The Court finds that defendant fails to show that his untimely motion was delayed for good cause. As an initial matter, nothing in defendant's motion excuses the three year delay in raising any factual issues relating to the execution of the search warrant. Defendant has been on notice as to the manner in which the search was conducted since his trial in July 2018 (at the latest). See Dkt. # 67. Further, he certainly had the chance to review discovery after that trial as he received it from his current counsel, who sent it multiple times. Similarly, nothing in defendant's motion excuses defendants failure to raise any potential new McGirt issues in the six months since the December 1, 2020 motions deadline, or at February pretrial hearing.

Because defendant fails to meet the first prong to show good cause, the Court finds the motion is untimely and denies it on that basis. However, the Court also notes that prejudice will not result from denying the motion as untimely. This is because the issues raised are without merit and unsupported by evidence or law. As discussed below, even the single issue that was not delayed three years, namely, the issue raised by the intervening case law in McGirt, is without merit.

**B.**

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." Arizona v. Evans, 514 U.S. 1, 10 (1995). However, when evidence is seized in violation of the Fourth Amendment, courts have adopted a rule by which such evidence can be suppressed from being used in criminal trials. Herring v. United States, 555 U.S. 135, 139 (2009). "The rule thus operates as

'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). Accordingly, "[w]here suppression [of the evidence] fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" Davis v. United States, 564 U.S. 229, 237 (2011) (quoting United States v. Janus, 428 U.S. 433 (1976)); see also United States v. Patterson, No. CR-20-71-RAW, 2021 WL 633022, at *3 (E.D. Okla. Feb. 18, 2021)

In light of the above rule, when law enforcement officials act in good faith with the reasonable belief that their actions do not violate the Fourth Amendment, the exclusionary rule does not apply, as "the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.'" United States v. McCane, 573 F.3d 1037, 1042 (10th Cir. 2009) (quoting Leon, 468 U.S. at 919). In United States v. Leon, 468 U.S. 897 (1984), the Court specifically held that "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis, 564 U.S. at 238–39 (quoting 468 U.S. at 922). This is because "[t]he error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." Id.

In this case, the law enforcement officer was acting pursuant to an order issued by a state magistrate judge. Defendant has not alleged that the execution of the warrant was objectively unreasonable in any way, and the Court finds no evidence of such unreasonableness. Therefore, the Court finds that, under Leon, the law enforcement officer was conducting his search in "objectively

reasonable reliance" on a warrant that is potentially invalid under McGirt[5] and the exclusionary rule should not apply.

A similar conclusion was reached in United States v. Patterson, No. CR-20-71-RAW, 2021 WL 633022, at *4 (E.D. Okla. Feb. 18, 2021). In that case, the court assessed whether a state law enforcement officer's pre-McGirt execution of a state-issued warrant as to the property of a Native American was reasonable, given the lack of jurisdiction brought to light by the Supreme Court's decision. Therein, the court first noted that it could not blindly "pretend the last century of state court prosecutions did not happen." 2021 WL 633022, at *4. Oklahoma "maintained unquestioned jurisdiction for more than 100 years" over land now-recognized as "Indian country" under both federal and tribal jurisdiction. McGirt, 140 S. Ct. at 2485 (Roberts, C.J., dissenting). As a result, the court found the law enforcement officer "certainly has every right to rely on the regular and consistent practices of not just his own agency, or even other agencies, but the practices of courts throughout the region in exercising jurisdiction in the form of search warrants, arrest warrants, and criminal proceedings." United States v. Patterson, 2021 WL 633022, at *4.

The court further noted that the officer executing the warrant was "not an attorney. Indeed, even nine of this country's pre-eminent jurists were sharply divided on the question of whether Congress disestablished the Muscogee (Creek) Nation Reservation." Id. The court found "[i]t is absurd to say that [the law enforcement officer], his superiors, or his trainers, should have known

---

[5]  The Court need not determine the issue of whether a state-court search warrant issued to authorize the search of a vehicle belonging to a Native American is presumptively invalid under McGirt at this time. In this case, it is enough to note that, in light of the state of Oklahoma's pre-McGirt de facto jurisdiction over the law enforcement of all citizens within its boundaries, the officer had a good-faith belief that he had the obligation to execute the warrant. The question as to whether state-court issued warrants are valid as against the property of Native Americans, post-McGirt, is not before this Court.

better than four of this nation's Supreme Court Justices, particularly where they had a century of precedent and practice buttressing their belief that they had jurisdiction to investigate and perform arrests of Native Americans on these lands." Id. This Court agrees entirely and adopts the reasoning in Patterson to the extent it applies to state-issued search warrants issued and executed within tribal jurisdiction against property of a tribal member prior to the ruling in McGirt.

In fact, the Court finds the search at issue is an even clearer example of a good-faith execution of a search warrant. In this case, the search at issue occurred not only three years before McGirt was decided, but before a related Tenth Circuit case addressing similar issues was decided. In Patterson, the court dismissed the defendant's argument that Tenth Circuit's decision in Murphy v. Royal, 866 F.3d 1164 (10th Cir. 2017), amended and superseded on reh'g (November 9, 2017) (en banc), should have put the officer on notice as to the fact that there might be a jurisdictional issue raised when executing warrants on tribal lands. Patterson, 2021 WL 633022, at *5. However, here the Court need not even entertain that argument, as Royal was decided months after the search occurred.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Dkt. # 170) is **denied**.

**DATED** this 18th day of April, 2021.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE